FELDMAN v DEPARTMENT OF SOCIAL SERVICES

Docket No. 77-4515. Submitted March 14, 1978, at Lansing.—Decided June 6, 1978.

Jack Feldman applied to the Michigan Department of Social Services to have a portion of Independence Manor, an independent living retirement community, licensed as an adult foster care facility. The license was denied by the department. The denial was upheld by an administrative law judge after a hearing on the matter. Mr. Feldman appealed the decision to circuit court. Summary judgment for defendant affirming the denial of the license, Oakland Circuit Court, Francis X. O'Brien, J. The plaintiff appeals. *Held:*

The foster care facility licensing act which limits the number of 65-year-old-or-older adults which may reside at a licensed facility does not contravene the equal protection clause of the Fourteenth Amendment to the United States Constitution because such a classification has a rational basis due to the increased care needed for citizens of advanced ages.

Affirmed.

1. APPEAL AND ERROR—CONSTITUTIONAL LAW—EQUAL PROTECTION— SOCIAL LEGISLATION—CLASSIFICATIONS—ADULT FOSTER CARE FACILITIES—RATIONAL BASIS.

The task of the Court of Appeals in evaluating constitutional challenges to social legislation on the basis of equal protection is to determine if the classification in question has a rational basis; if any state of facts can reasonably be conceived as a just basis for the legislative classification, the Court's inquiry is at an end, and the statute should be sustained.

2. CONSTITUTIONAL LAW—RATIONAL BASIS—ADULT FOSTER CARE FACILITIES—ELDERLY RESIDENTS—LIMITED NUMBERS.

A reasonable basis exists for the Legislature to limit the number of elderly residents in adult foster care facilities because the greater the number of the elderly at a facility the less capable

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 496 *et seq.*
[2] [No citation.]

the facility may be of satisfying the particularly greater care requirements of the elderly.

*Neal L. Grossman,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker,* and *Mark S. Meadows,* Assistants Attorney General, for defendant.

Before: Bashara, P. J., and M. J. Kelly and Allen, JJ.

Per Curiam. Plaintiff appeals from a circuit court affirmance of a determination by defendant that plaintiff's adult care facility is ineligible for licensing as an adult foster care facility pursuant to 1972 PA 287, § 5.[1] The basis for the administrative decision was that plaintiff had more than six adults of age 65 or older residing in his facility.

On appeal to the circuit court, plaintiff contended that the licensing act limitation on the permissible number of 65-year-old adults was a denial of equal protection of the law in contravention of the Fourteenth Amendment to the United States Constitution. Plaintiff urged that the limitation unconstitutionally infringed upon the associational rights of senior citizens and, additionally, lacked a rational basis.

The trial court ordered summary judgment for defendant on the grounds that plaintiff lacked standing to litigate the constitutional issue claimed. The court further found that the legislation had a rational basis.

[1] MCL 331.685; MSA 16.610(5), amended by 1976 PA 232, § 1, effective August 4, 1976. The pertinent text of the statute provides, "An adult foster care facility shall not be licensed to care for more than 6 adults of age 65 or older."

The care rendered by plaintiff at his facility is in exchange for monetary consideration. To continue operating that facility, our state law requires that plaintiff obtain the appropriate license. MCL 331.685, 331.691; MSA 16.610(5), 16.610(11). Under the current mode of operation, the age mix of residents at plaintiff's facility would preclude licensing. We therefore conclude that plaintiff has a sufficient interest in the outcome of this litigation to assure a vigorous and sincere advocacy of the merits of the challenge to the constitutionality of the statute. Such an interest establishes the requisite standing. *Sierra Club v Morton,* 405 US 727, 731–732; 92 S Ct 1361, 1364; 31 L Ed 2d 636, 641 (1972), *Michigan License Beverage Association v Behnan Hall, Inc,* 82 Mich 319; 266 NW2d 808 (1978).

However, plaintiff's interest in this litigation is exclusively of a pecuniary nature. It rests upon neither a fundamental[2] constitutional right nor a classificatory scheme perceived precedentially to be suspect.[3] As it pertains to plaintiff, the class distinction drawn by the act is between adult care facilities with more than six residents 65 years of age or older and those with six or fewer of such residents.

The legislation providing for the licensing and regulation of adult foster care facilities has the principal purpose of assuring that such facilities offer a clean and safe environment for the resi-

---

[2] *See, e.g., Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), *Bullock v Carter,* 405 US 134; 92 S Ct 849; 31 L Ed 2d 92 (1972), *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969), *Williams v Rhodes,* 393 US 23; 89 S Ct 5; 21 L Ed 24 (1968), *Skinner v Oklahoma,* 316 US 535; 62 S Ct 1110; 86 L Ed 1655 (1942).

[3] *See, e.g., Graham v Richardson,* 403 US 365; 91 S Ct 1848; 29 L Ed 2d 534 (1971), *McLaughlin v Florida,* 379 US 184; 85 S Ct 283; 13 L Ed 2d 222 (1964), *Oyama v California,* 332 US 633; 68 S Ct 269; 92 L Ed 249 (1948).

dents and are operated by those who are capable of rendering constructive assistance to those persons.[4] Essentially, the act and its accompanying administrative rules are oriented toward maintaining the social welfare inherent in a quality adult care program. In evaluating constitutional challenges to such social legislation on the basis of equal protection, our task is to determine if the classification in question has a rational basis. *Dandridge v Williams,* 397 US 471, 484; 90 S Ct 1153, 1161; 25 L Ed 2d 491, 501 (1970).

If any state of facts can reasonably be conceived as a just basis for the legislative classification, our inquiry is at an end, and the statute will be sustained. *Id.* at 485; 90 S Ct at 1161; 25 L Ed 2d at 502. Such a basis is evident from the circumstance addressed by the challenged classification.

An adult foster care facility is anticipated by the act and regulations to provide its residents with a more moderate degree of personal assistance in sustaining their daily well-being than rendered in such facilities as old age or nursing homes.[5] The Legislature could reasonably expect that persons who, either by choice or necessity, reside in adult care facilities would realize an increasing need for personal assistance in their day-to-day activities as a concomitant of advancing age. Because of the varying capabilities of the different types of adult care facilities to respond to those needs, a reasonable basis exists for the Legislature to limit the number of elderly residents in those facilities less capable of satisfying their particularly greater care requirements. This basis of legislative deter-

---

[4] *See* 1975 AACS R 400.2101 *et seq.,* especially R 400.2111 and 400.2112.

[5] *Compare* MCL 331.651 *et seq.;* MSA 14.1281 *et seq.,* and 1969 AACS R 325.1901 *et seq.,* especially R 325.1942-69; with MCL 331.681 *et seq.;* MSA 16.601(1) *et seq.,* and 1975 AACS R 400.2101 *et seq.*

mination is rationally connected to the legitimate objective of assuring the safety and well-being of persons utilizing the services of adult care facilities.

Under the governing standard of judicial review, our inquiry does not extend to the numerical limitations by which the Legislature achieves the foregoing objective. *Dandridge, supra.* Such determinations are wisely delegated to the investigative processes from which legislative enactments are derived. Having discerned a rational basis for those limitations, we affirm the trial court's decision sustaining the licensing statute.

Affirmed. No costs, a public question being involved.